1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10                     **SACRAMENTO DIVISION**
11

12   MAURICE COOK,                    )        Case No.  2:06-cv-02110-MMS
                                      )
13                    Petitioner,     )        ORDER
     v.                               )
14                                    )
     KEN CLARK, et al.,               )
15                                    )
                     Respondents.     )
16   _____)

17

18         On September 22, 2006, Maurice Cook ("Petitioner"), a California state

19   prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28

20   U.S.C. § 2254.  On February 23, 2007, Respondents filed an answer.  On March

21   23, 2007, Petitioner filed a reply and supporting memorandum.

22         Petitioner asserts that his rights under the Sixth and Fourteenth Amendments

23   to the United States Constitution were violated by the individual and cumulative

24   effects of several errors made by counsel on direct appeal in the state court.  For

25   the reasons set forth below, the petition for writ of habeas corpus is DENIED.

26   / / /

27   / / /

28

**BACKGROUND**

**A.    Procedural Background**

On March 13, 2003, Petitioner was convicted by jury in the Yolo County Superior Court of one count of second-degree murder (Cal. Penal Code § 187(a)); one count of discharging a firearm in a grossly negligent manner (Cal. Penal Code § 246.3); one count of possessing a firearm within ten years of a criminal conviction (Cal. Penal Code § 12021(c)(1)); and one count of carrying a loaded firearm in a public place or vehicle after a criminal conviction (Cal. Penal Code § 12031(a)(1), (2)(D)).  Petitioner's sentence of 40 years to life included an enhancement for intentional use of a firearm causing death or great bodily injury under Cal. Penal Code § 12022.53(d).

On April 5, 2004, the California Court of Appeal affirmed Petitioner's convictions, and on June 9, 2004, the Supreme Court of California denied review. On June 2, 2005 and September 2, 2005, Petitioner filed two petitions for writ of habeas corpus in the Yolo County Superior Court.  The Superior Court denied both petitions.  Petitioner sought appellate review of the second petition; both the California Court of Appeal and the California Supreme Court denied relief.

On September 22, 2006, Petitioner filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his convictions violate his rights under the Sixth and Fourteenth Amendments.

**B.    Factual Background**

The California Court of Appeal summarized the facts of the case as follows:

Defendant, his two brothers, Antonio and Jamarl, and several other individuals were drinking alcohol, smoking marijuana, and listening to music in the parking lot of an apartment complex on the evening of April 3, 2002.  One of those present was James Giles, who was wearing a blue shirt, a color associated with members of the Crips street gang. Defendant and his brothers were active members of the Oak Park Blood street gang.

2

At some point, Giles said to Antonio, "What's up, Loc?" It is disrespectful for a Crip to call a Blood "Loc." When defendant and Jamarl confronted Giles, who was sitting on the hood of a car, Giles got up and took off his jacket. Defendant interpreted this as preparation to fight. Defendant said, "I don't fight niggas no more, I kill niggers." He then walked to his car, retrieved a .38 caliber snub-nose revolver from the trunk, walked to within two feet of Giles, and fatally shot him in the chest and thigh.

After Giles was shot, defendant and his brother ran to their car and "peel[ed] out of the parking lot." Defendant fired one to five shots in the air from the vehicle as they were leaving. Although some at the scene had run away when the confrontation occurred, there were still people in the area when defendant discharged the gun from the vehicle. When the police arrived approximately 20 minutes later, there were 50 to 60 people at the crime scene area.

Defendant, who was arrested a short time later, initially denied any involvement in the shooting. In a second interview, he said that he shot Giles out of "stupidity" after Giles had pulled out a sharp object or knife.

*Defense*

The defense theory was that the killing was only voluntary manslaughter because defendant acted under a heat of passion, or he acted in an honest but unreasonable belief in the need to defend his brother, Jamarl, or he was too intoxicated to form the requisite specific intent.

Defendant testified as follows: he was drinking in the parking lot and listening to music with his two brothers and some other people. After Jamarl confronted Giles, defendant, whose vision was "blurred," saw a "sharp object" in Giles's left hand. Defendant walked over to his car, retrieved his gun, and shot Giles in the leg and chest because defendant was scared and thought that Giles was going to jump defendant's brothers. Defendant claimed that he accidentally fired off another round through the roof of the car as he was leaving.

# DISCUSSION

In his federal habeas petition, Petitioner initially asserted that his

constitutional rights were violated because the state court gave a flight instruction

to the jury. Respondent rebutted this claim in its answer, and Petitioner

subsequently conceded the claim in his reply. Petitioner's remaining claims arise

under the Sixth and Fourteenth Amendments. Petitioner asserts that his counsel on

direct appeal was constitutionally ineffective, and that the cumulative effect of

3

1  counsel's errors violated Petitioner's right to due process.

2  **A.    Standard of Review**

3       The petition is governed by the provisions of the Anti-Terrorism and

4  Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  AEDPA provides

5  the following standards for federal habeas review of state court decisions:

6       (d) An application for a writ of habeas corpus on behalf of a person in
         custody pursuant to the judgment of a State court shall not be granted
7        with respect to any claim that was adjudicated on the merits in State
         court proceedings unless the adjudication of the claim–
8            (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
9            determined by the Supreme Court of the United States; or
             (2) resulted in a decision that was based on an unreasonable
10           determination of the facts in light of the evidence presented in the
             State court proceeding.

11

12  28 U.S.C. § 2254(d).

13       The Supreme Court has stated that a federal court may grant habeas relief

14  under the "contrary to" clause "if the state court arrives at a conclusion opposite to

15  that reached by this Court on a question of law or if the state court decides a case

16  differently than this Court has on a set of materially indistinguishable facts."

17  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Habeas relief may be granted

18  under the "unreasonable application" clause "if the state court identifies the correct

19  governing legal principle from [the Supreme] Court's decisions but unreasonably

20  applies that principle to the facts of the prisoner's case."  Id.  To warrant habeas

21  relief, the state court's application of federal law must be more than erroneous; it

22  must be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

23       A federal habeas court's examination is focused on the "last reasoned

24  decision" of the state courts.  Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  The

25  "last reasoned decision" in this case is the October 31, 2005 order of the Yolo

26  County Superior Court, denying the second state habeas petition.

27

28                                          4

**B.    Ineffective Assistance of Counsel**

Petitioner asserts that his appellate counsel was constitutionally ineffective for failing to challenge on direct appeal three instances of ineffective assistance by Petitioner's trial counsel.  Petitioner contends appellate counsel should have raised claims regarding trial counsel's failure to investigate juror misconduct, to object to the admission of certain character evidence, and to object to prosecutorial misconduct during the state's closing argument.  Petitioner exhausted these claims by raising and arguing them in his second state habeas petition.  See Reynoso v. Giurbino, 462 F.3d 1099, 1109-10 (9th Cir. 2006).

The Sixth Amendment guarantees the right to effective assistance of counsel.  U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668 (1984). A claim of ineffective assistance is analyzed according to the two-part test set forth in Strickland.  First, the defendant must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.  In making this showing, the defendant must rebut "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  Id. at 689.   Second, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Petitioner's claim of ineffective assistance of appellate counsel requires him to show a reasonable probability that the result of his appeal would have been different but for appellate counsel's errors.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

**1.    Juror Misconduct**

Petitioner's first ineffective assistance claim concerns trial counsel's failure to investigate an issue of potential juror bias.  Petitioner asserts that Juror #2 gave a false answer to a question on the voir dire questionnaire which asked if the juror or

a family member had ever been the victim of a crime. Juror #2 answered "no" on the questionnaire. However, after an investigation by the prosecutor's office due to suspicions that Juror #2 was associated with gang violence, it came to light during trial that Juror #2 had a close cousin who "was the victim of a brutal attack and sustained major injuries," allegedly at the hands of a suspected member of the Russian mafia. Petitioner contends that trial counsel acted ineffectively by failing to conduct his own investigation into Juror #2's potential bias against gang members, and by failing to object to the presence of Juror #2 on the jury.

The trial court held an evidentiary hearing and heard extensive argument from the prosecutor and the three defense attorneys representing Petitioner and each of his co-defendants. All three defense attorneys argued persuasively against removal of Juror #2, believing the juror's continued presence on the jury without singling him out for removal or questioning him was in the best interests of their clients. The trial court agreed.

Petitioner has not demonstrated that his trial counsel's conduct fell outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The record before the court permits the conclusion that trial counsel acted strategically to retain Juror #2 as a juror potentially favorable to his client and to avoid disruption of the trial. Petitioner has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Because trial counsel's performance was not constitutionally defective, appellate counsel did not act unreasonably by failing to challenge trial counsel's actions on direct appeal. Under California law, an ineffective assistance claim brought on direct appeal will result in reversal of the conviction "only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's

omissions." People v. Lucas, 907 P.2d 373, 442 (Cal. 1995). In light of this strict standard, appellate counsel's decision not to raise an ineffective claim on direct appeal did not violate Strickland. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) ("In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."). Moreover, as discussed in further detail below, Petitioner failed to demonstrate prejudice.

**2. Admission of Character Evidence**

Petitioner's second contention concerns the introduction of evidence that three days prior to the charged offense, Petitioner entered a residence with a loaded gun and bragged about being a Blood, "shooting a nigga," and not caring about what he had done. Petitioner acknowledges that trial counsel brought a motion in limine to exclude the evidence. The trial court denied the motion in limine and admitted the evidence as relevant to proving Petitioner's intent to shoot Giles. See Cal. Evid. Code § 1101(b). Petitioner contends that trial counsel was under an obligation to renew his objection on the record at trial in order to preserve the claim for appeal, and that appellate counsel's failure to argue this point of error constituted ineffective assistance of counsel.

Under the standard set forth in Strickland, trial counsel's decision not to make further objection to the introduction of evidence of Petitioner's prior act was not so deficient as to be objectively unreasonable. Under California law, a motion in limine to exclude evidence is sufficient to avoid procedural default and preserve the issue for appeal as long as the context for admission of the evidence does not change by the time it is introduced at trial. See People v. Robinson, 124 P.3d 363, 404 (Cal. 2005); People v. Morris, 807 P.2d 949, 968 (Cal. 1991).

Because trial counsel's performance was not deficient, appellate counsel did not act ineffectively by deciding not to challenge trial counsel's actions on appeal. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (appellate counsel is not obligated to raise every non-frivolous argument on appeal); Turner v. Calderon, 281 F.2d 851, 872 (9th Cir. 2002) ("To be constitutionally effective, '[c]ounsel need not appeal every possible question of law.'") (citation omitted).  In addition, as discussed further below, Petitioner suffered no prejudice as a result of appellate counsel's actions.

### 3. Prosecutorial Misconduct

Petitioner's third claim is that appellate counsel was ineffective for neglecting to challenge trial counsel's failure to object to the prosecutor's alleged mischaracterization of Petitioner's testimony during the state's closing argument. At trial, Petitioner admitted that he was guilty of possessing a loaded firearm in a vehicle, and within ten years of a criminal conviction.  He admitted to firing his gun through the roof of his car as he drove away from the scene.  Petitioner also admitted to killing Giles.  He stated that he initially shot Giles in the leg in order to prevent a confrontation between Giles and Petitioner's brother; however, when Giles grew more angry and refused to back off, Petitioner shot him again, this time in the chest.

During closing argument, the prosecutor stated, "[Petitioner] told you why he did it, because [the victim] – he didn't stop moving.  He was still there.  He wanted to kill him."  The prosecutor later told the jury,

> Maurice Cook has already admitted to you that he is guilty of every charge that just deals with guns. . . . He said if there was a gun charge, I'm guilty, so that's an issue you don't need to talk about.  When you combine his admission in that regard with his gang involvement, his celebration, the fact that these are gang crimes, you are done with all those counts, and it is – really it is as simple as that with this case, with everything that you have.

8

Petitioner asserts that the prosecutor's first statement constituted an improper opinion on the issue of Petitioner's guilt, and that the prosecutor's second statement permitted the jury to convict Petitioner without adequate proof.

"When prosecutorial misconduct is alleged, 'the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly.'" United States v. Henderson, 241 F.3d 638, 652 (9th Cir. 2000) (quoting United States v. Frederick, 78 F.3d 1370, 1379 (9th Cir. 1996)). During closing argument, a prosecutor may summarize and comment upon the evidence given at trial as long as his or her statements are "phrased in such a manner that it is clear to the jury that the prosecutor is summarizing evidence rather than inserting personal knowledge and opinion into the case." United States v. Hermanek, 289 F.3d 1076, 1100 (9th Cir. 2002). A prosecutor is also permitted to offer any "reasonable inferences" from the evidence given at trial. Henderson, 241 F.3d at 652.

With respect to the first challenged statement, the record reflects that the prosecutor simply recounted Petitioner's testimony that he shot Giles in the chest after the shot to the leg failed to deter Giles, then asked the jury to draw the reasonable inference that Petitioner "wanted" to kill Giles in order to stop him. Defense counsel's decision not to object fell within the bounds of competent representation. Appellate counsel, in turn, was not ineffective for failing to raise this issue on direct appeal. See Miller, 882 F.2d at 1434.

With respect to the second challenged statement, Petitioner concedes that he admitted to the three substantive gun charges, see Cal. Penal Code §§ 246.3, 12021(c)(1), 12031(a)(1), (2)(D), but asserts that he did not admit to intentional use of a firearm as required for the firearms enhancement, see Cal. Penal Code § 12022.53(d). He argues that the prosecutor's statement that Petitioner admitted

guilt of "every" gun charge permitted the jury to reach its finding on the enhancement without adequate proof.

Regardless of whether the prosecutor's statements exceeded the reasonable inferences that could be drawn from the evidence presented at trial, trial counsel's performance was not constitutionally deficient. Trial counsel's performance must be judged holistically, in light of his actions throughout Petitioner's trial. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986). Although trial counsel did not object during the state's closing argument, counsel, in his own closing argument, responded directly and in significant detail to the prosecutor's statements: "Now, how do we know what [Petitioner's] intent was? He has admitted that he shot James Giles, but that doesn't tell us what intent he had. . . . And so to determine what intent he possessed at various points of time you have to look at all the bits and pieces of evidence you have heard." Because trial counsel's actions during and after the state's closing argument plainly did not violate Strickland, appellate counsel reasonably refrained from raising this issue on appeal. See Turner, 281 F.3d at 872 ("A failure to raise untenable issues on appeal does not fall below the Strickland standard.").

With respect to Strickland's prejudice prong, Petitioner has not shown a reasonable likelihood that the outcome of his appeal would have been different if appellate counsel had challenged any of trial counsel's actions on direct appeal. In light of the other evidence of Petitioner's guilt, including his own admissions and the testimony of numerous eyewitnesses, there was no reasonable likelihood that the California Court of Appeal would have concluded that trial counsel's actions prejudiced Petitioner's case. Accordingly, appellate counsel's decision not to raise any ineffectiveness claims did not affect the outcome of Petitioner's direct appeal. The Yolo County Superior Court's dismissal of Petitioner's state habeas petition

10

on the ground that Petitioner failed to demonstrate prejudice from any of the alleged errors of appellate counsel was, therefore, neither contrary to nor an unreasonable application of clearly established federal law as set forth in Strickland. Petitioner is not entitled to federal habeas relief on any of his ineffective assistance claims.

## C.    Cumulative Error

Petitioner's final contention is that the cumulative effect of appellate counsel's alleged errors violated his right to due process. Although Petitioner presented this claim in his state habeas petition, the state court did not expressly address it. When a dispositive state court order does not "furnish a basis for its reasoning," the federal habeas court must conduct "an independent review of the record . . . to determine whether the state court clearly erred in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000); see also Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"The Supreme Court has clearly established that the combined effect of multiple trial court errors . . . . can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 290 n.3, 298 (1973)). A federal court should grant habeas relief if "the combined effect of individually harmless errors render[ed] a criminal defense 'far less persuasive than it might [otherwise] have been.'" Id. (alteration in original) (quoting Chambers, 410 U.S. at 294). Under the applicable harmless error standard, relief will be granted on a cumulative error claim "only if the error[s] had a 'substantial or injurious effect' on the verdict." Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)). The cumulative effect of multiple errors is considered harmless "[i]f the evidence of guilt [was] otherwise

overwhelming." Id. at 928.

On review of the record in Petitioner's case, the court concludes that, even assuming a constitutional violation could arise from the cumulative effect of appellate counsel's failure to attack any of the challenged aspects of trial counsel's performance, any error was harmless. Petitioner admitted on the stand that he was guilty of all the substantive charges levied against him, and his guilt was corroborated by numerous prosecution witnesses who observed Petitioner's confrontation with Giles. Accordingly, any errors of appellate counsel could not have had a "substantial or injurious effect" on the outcome of Petitioner's appeal. Brecht, 507 U.S. at 637-38.

**D.      Request for a Evidentiary Hearing**

Petitioner requests an evidentiary hearing. The court concludes that Petitioner's claims are unsupported by the record and DENIES the request. See Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1940 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus is DENIED.

DATED:      April 6, 2009


/s/ *Mary M. Schroeder*
MARY M. SCHROEDER,
United States Circuit Judge
Sitting by designation

12